IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ASHLEY HOGGARD,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. DLB-23-3457 |
| **CIOX HEALTH, LLC,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Ashley Hoggard and Maia Bar Am sued CIOX Health, LLC ("CIOX") on their own behalf and on behalf of a putative class for charging medical records fees they claim violated Maryland's Confidentiality of Medical Records Act ("MCMRA"), Md. Code Ann., Health-Gen. §§ 4-301 *et seq.*; Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.*; and Consumer Debt Collection Act ("MCDCA"), Com. Law § 14-202(8). ECF 2. The plaintiffs filed their complaint in the Circuit Court for Montgomery County, Maryland. *Id.* CIOX removed the case to this court. ECF 1. Now the plaintiffs move to remand the case back to state court on the ground that the amount in controversy is not high enough to sustain federal jurisdiction. ECF 17. The motion is fully briefed. ECF 17-1, 22, 23. No hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the motion to remand is denied.

**I.     Background**

CIOX is a Georgia corporation that contracts with health care providers to maintain, retrieve, and prepare patients' medical records. ECF 2, ¶¶ 2, 23. When CIOX completes a response to a patient's request, CIOX charges the patient certain fees. *Id.* ¶¶ 6–9. As relevant here, when CIOX retrieves and prepares electronic medical records (as opposed to paper records), the

company charges a fee per page, an "Electronic Data Archive Fee," a "Digital Archive Fee," a "Retrieval Fee," an "Instant Download Fee," and a "Handling Fee." *Id.* ¶ 7.

Maryland prohibits health care providers from charging a fee per electronic page greater than 75 percent of the fee they charge per paper page. *Silver v. Greater Balt. Med. Ctr.*, 243 A.3d 576, 583 (Md. App. Ct. 2020) (citing Md. Code Ann., Health-Gen. § 4-304(c)(3)(iii)). Maryland also prohibits health care providers from charging more than $80 total in page-based fees for electronic medical records. *Id.* Yet often, according to the plaintiffs, CIOX charges a requester over $80 total for the production of electronic medical records. ECF 2, ¶ 9. And the fee CIOX charges per electronic page often exceeds 75 percent of the fee CIOX charges per paper page. *Id.*

In late 2021, Hoggard—a Maryland resident—requested her medical bill from Sinai Hospital of Baltimore through her attorneys and personal representatives. *Id.* ¶ 17. On March 1, 2022, CIOX sent Hoggard an invoice charging her $0.88 per page, a $1.00 handling fee, and a "Basic Fee" of $22.88, for a total of $24.76. *Id.* ¶ 18. Hoggard's attorney paid the fee, and Hoggard reimbursed her attorney. *Id.*

In 2022, Bar Am—also a Maryland resident—requested her medical records from Johns Hopkins Hospital. *Id.* ¶ 19. On March 23 of that year, CIOX sent Bar Am an invoice for $86.54 and notified her that it would not provide her records until she paid in full. *Id.* ¶ 20. Bar Am's attorneys paid the fee, and Bar Am reimbursed them. *Id.* On November 3, CIOX sent her another invoice for $86.54 for different records responsive to her request. *Id.* ¶ 21. Once again, she paid the invoice through her attorneys. *Id.* Bar Am was charged $0.66 per page for some electronic records and $0.08 per page for others. ECF 2-2 & 2-3.

On December 1, 2023, Hoggard and Bar Am, on behalf of themselves and a putative class, sued CIOX in the Circuit Court for Montgomery County, Maryland. ECF 2. The plaintiffs claim

that charging and collecting the "Electronic Data Archive Fee," "Digital Archive Fee," "Retrieval Fee," "Instant Download Fee," and "Handling Fee" (which they dub, collectively, "junk fees"); charging a total fee over $80; and charging a fee per electronic page that is more than 75 percent of the fee the company charges per paper page violates the MCMRA, the MCPA, and the MCDCA. ECF 2, ¶¶ 97–125. The plaintiffs define the class they seek to represent as

> [a]ll persons in interest or any authorized person who, during the time frame of this complaint, sought copies of Medical Records from a Maryland health care provider, or had their Medical Records requested by some other person pursuant to their authorization, and were charged a Junk Fee, or a fee in violation of the 75%-Rule or the $80-Rule, by CIOX Health, LLC.

*Id.* ¶ 83. The plaintiffs request an order certifying the case as a class action, actual damages, a declaration under the Maryland Declaratory Judgment Act "that CIOX's predatory conduct and unlawful billing and collections practices alleged herein" violate the MCMRA, and an award of reasonable attorneys' fees and costs. *Id.* at 24; *see also id.* ¶¶ 126–32.

CIOX reports that it charged $5,039,050.00 in the challenged fees between February 3, 2010 and February 3, 2022. ECF 1, ¶¶ 3, 15 (citing ECF 1-1, ¶¶ 5, 7). The plaintiffs allege that CIOX collected no more than $2.2 million in these fees during the unspecified time frame at issue in this case. ECF 2, ¶¶ 11–13.

On December 21, 2023, CIOX removed the case to this court. ECF 1. On January 19, 2024, the plaintiffs moved to remand the case. ECF 17. CIOX opposed the motion. ECF 22. The plaintiffs replied. ECF 23. The plaintiffs later filed a notice of supplemental authority. ECF 25.

Meanwhile, on October 3, 2023, Earl Ayers and Melissa Harmon filed a class action complaint against CIOX in the Circuit Court for Montgomery County, Maryland over the "Basic Fee" CIOX allegedly charges for responding to requests that yield no records. ECF 3 in *Ayers v. CIOX Health, LLC*, Civ. No. 23-3079 (D. Md.) ("*Ayers*"). The complaint in that case expressly

disclaimed challenging to other alleged "junk fees" CIOX may charge. *Id.* ¶¶ 6–7. On November 10, 2023, CIOX removed *Ayers* to this court. ECF 1 in *Ayers*. And on December 7, the *Ayers* plaintiffs moved to remand that case to state court. ECF 10 in *Ayers*.

One other, prior case provides relevant context. On February 3, 2022, Charles Pugh and Veronica Stewart, individually and on behalf of a class, sued CIOX in the Circuit Court for Montgomery County, Maryland. ECF 2 in *Pugh v. CIOX Health, LLC*, PX-22-617. The *Pugh* plaintiffs challenged both sets of fees that the plaintiffs challenge in this case and in *Hoggard*: the Basic Fee for requests where no records are found and the so-called "junk fees" for the delivery of electronic records. *See id.* ¶¶ 7, 54–60. CIOX removed that case to this court. ECF 1 in *Pugh*. The plaintiffs moved to remand. ECF 40 in *Pugh*. Ultimately, the court denied the motion to remand on the ground that the court would have original jurisdiction over the case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). On September 26, 2023, the *Pugh* plaintiffs voluntarily dismissed their case. *See* ECF 54 in *Pugh*. Counsel in *Pugh* represent the plaintiffs in *Ayers* and in *Hoggard*.

## II.     Standard of Review

When a plaintiff files a case in state court, the defendant has "[t]he right to remove [the] case from state to federal court" if a United States district court would have original jurisdiction. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing 28 U.S.C. § 1441). If the defendant predicates removal on diversity jurisdiction, "the cause of action must be between parties of completely diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and the amount in controversy must exceed $75,000." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 394 (4th Cir. 2018) (citing 28 U.S.C. § 1332(a)(1)). If the defendant predicates removal on CAFA, the case must be a "putative class action[] with (1) more than 100

class members, (2) an aggregate amount in controversy exceeding $5,000,000, and (3) minimal diversity between the parties." *See Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 192 (4th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2), (5)). If the plaintiff challenges the defendant's grounds for removal by moving to remand, the defendant bears the burden of demonstrating that removal is appropriate. *Id.* at 194. "To resolve doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Id.* (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014)). The question is "not what the plaintiff will actually recover," but rather "the amount that will be put at issue in the course of the litigation"—that is, whether "'a fact finder might legally conclude that' damages will exceed the jurisdictional amount." *Id.* at 196 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008), and *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)).

Because removal raises "significant federalism concerns," courts generally must construe removal jurisdiction strictly. *See Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Mulcahey*, 29 F.3d at 151). However, "no antiremoval presumption attends cases invoking CAFA." *Scott*, 865 F.3d at 194 (quoting *Dart Cherokee*, 574 U.S. at 89).

## III. Discussion

CIOX argues that the Court should deny the plaintiffs' motion to remand because the Court has CAFA jurisdiction over this case or, in the alternative, diversity jurisdiction. The parties are fully diverse. And the parties agree that the class has more than 100 members. ECF 1, ¶ 19; ECF 2, ¶ 82. The only element of either form of jurisdiction in dispute is the amount in controversy. CIOX asks this Court to aggregate the amount in controversy here with the amount in controversy in *Ayers*. As a fallback, CIOX offers a variety of arguments for why this case belongs in this court

even if the amount in controversy here is considered on its own. The Court finds that CIOX has shown the Court would have jurisdiction pursuant to CAFA.

### A. Aggregation with *Ayers*

CIOX argues that the amount in controversy should be calculated by aggregating the amount at issue here and the amount at issue in *Ayers*. CIOX is incorrect.

CIOX's argument for aggregation rests on *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008). In *Freeman*, the plaintiffs in a putative class action divided their original case into five separate cases to keep the amount in controversy in each case below the CAFA threshold of $5 million. *Id.* at 406–07. Each of the five new cases involved the same parties and the same claims as the original case and as the other splinter cases. *Id.* The sole difference was that each splinter case covered the plaintiffs' damages over successive six-month intervals. *Id.* at 407. The district court granted the plaintiffs' motion to remand, finding that the defendant had failed to bear its burden of showing that each case met CAFA's amount-in-controversy requirement. *Id.* On appeal, the Sixth Circuit held that the district court should have aggregated the amounts in controversy in each case and treated them "as if plaintiffs filed a claim worth up to $24.5 million." *Id.* at 409. The reason: The five cases were "identical in all respects except for the artificially broken up time periods" and the plaintiffs' counsel conceded that "avoiding CAFA was the only reason for this structuring." *Id.* To the Sixth Circuit, "[i]f such pure structuring permits class plaintiffs to avoid CAFA, then Congress's obvious purpose in passing the statute . . . can be avoided almost at will." *Id.* However, even as the Sixth Circuit held that the amounts in controversy in these cases should have been aggregated, the court noted that its "holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA." *Id.*

The Fourth Circuit has never adopted *Freeman* or any comparable rule calling for the aggregation of the amounts in controversy of separate but formerly unified class actions. *See Colbert v. Capital One, N.A.*, No. SAG-20-0165, 2020 WL 8458960, at *2 (D. Md. March 18, 2020) ("Capital One has not directed this Court to any instance in which the United States Court of Appeals for the Fourth Circuit has adopted the 'aggregation' principle that Capital One propounds here."); *McFarland v. Capital One, N.A.*, No. TDC-18-2148, 2019 WL 2330872, at *3 (D. Md. May 31, 2019) ("This aggregation principle has not been adopted by the Fourth Circuit or any other circuit."). CIOX cites only one case from this court that it claims endorsed *Freeman*: *Simon v. Marriott International, Inc.*, Nos. PWG-19-2879 & PWG-19-1792, 2019 WL 4573415 (D. Md. Sept. 20, 2019). According to CIOX, *Simon* "followed the logic of *Freeman*" and aggregated the amounts in controversy across multiple class actions. ECF 17, at 11. Whatever the best way to characterize *Simon* is, *Simon* is not applicable here. *See Colbert*, 2020 WL 8458960, at *2–3 (distinguishing *Simon*). As *Simon* took pains to note, that decision addressed only "the narrow issue" of whether "a class action plaintiff [may] pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing" federal multi-district litigation. *Simon*, 2019 WL 4573415, at *3. *Hoggard* and *Ayers* do not raise that issue at all. As *Simon* also noted, that decision answered the question before it on narrow grounds: that the claims in the case the plaintiff was trying to remand were "wholly included" in the class actions within the pending multi-district litigation. *See id.* at *4. Neither of the two cases CIOX asks the Court to treat as one wholly includes the claims of the other.

Even if *Freeman* were the law in this circuit, *Freeman* would not call for aggregating this case with *Ayers*. *Freeman* held that "[b]ecause no colorable basis for dividing the claims has been identified by the plaintiffs other than to avoid the clear purpose of CAFA, remand was not proper."

7

*Id.* at 406. Here, however, there is a colorable basis for dividing the claims: They are substantively distinct claims by distinct classes of aggrieved individuals. In *Freeman*, the cases involved identical claims, distinguished only by time period. *See id.* Here, the cases involve different claims: in *Hoggard*, that certain electronic records fees are unlawful, and in *Ayers*, that the "Basic Fee" for requests turning up no records is unlawful. In *Freeman*, the cases the defendants sought to aggregate involved identical parties. *See id.* Here, the cases the defendant wants to aggregate involve different parties: the people who paid the challenged electronic records fees and the people who paid the "Basic Fee" for requests yielding no records. Even if some people paid both fees, the classes are not identical. So whereas in *Freeman* there was no colorable basis for dividing the cases, *see id.*, here there is a colorable basis: *Ayers* and *Hoggard* involve different legal claims by different classes of people.

Accordingly, the Court declines to calculate the amount in controversy in this case by aggregating it with *Ayers*. The amount in controversy in this case is the amount in controversy in this case alone.

### B. CAFA

Next, CIOX contends that even considered on its own, this case's amount in controversy exceeds CAFA's threshold of $5,000,000. The parties agree that there are at least $2.2 million at issue—the putative class's economic damages from the challenged fees CIOX charged and collected from them. CIOX argues that the plaintiffs' economic damages actually run to $5,039,050—the amount of the challenged fees CIOX charged, not just the amount CIOX charged and collected. CIOX is correct.

The Fourth Circuit's decision in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293 (4th Cir. 2008), calls for that result. The *Strawn* plaintiffs filed a class action in West Virginia court against

8

AT&T for automatically enrolling each new cellular service customer in a $2.99 per month roadside assistance plan without their affirmative consent. *Id.* at 294. They defined the class as encompassing all people who purchased cell service from AT&T in West Virginia and were charged the $2.99 fee automatically, without opting into the roadside assistance program. *Id.* at 295. AT&T removed the case to federal court and the plaintiffs moved to remand, arguing that the case did not satisfy CAFA's amount in controversy requirement. *Id.* at 294. AT&T filed an affidavit asserting that over the life of the challenged program, the company automatically charged over 58,000 customers the $2.99 fee. *Id.* at 295. The company concluded that because the West Virginia law the plaintiffs invoked provided for at least $200 in statutory damages for each class member, the amount in controversy exceeded $11 million. *Id.* In response, the plaintiffs did not challenge AT&T's calculations. *See id.* Instead, they argued that the amount in controversy included only the fees charged to people who were "unwillingly enrolled" in the roadside assistance program—that is, excluding any roadside assistance fees charged to people who chose to retain the service after discovering they had been automatically enrolled. *Id.* at 298. The district court agreed with the plaintiffs and remanded the case to state court. *Id.* at 294.

On appeal, the Fourth Circuit reversed the grant of the motion to remand. *Id.* First, the court noted that the plaintiffs alleged in their complaint that AT&T violated West Virginia law by automatically enrolling cellular customers in the roadside assistance program and charging the fee—regardless of whether they opted out later once they knew about it. *Id.* at 298–99. Second, the court found that the class definition "ma[de] no distinction" between people who paid the charge and chose to retain the service and people who paid the charge and chose to cancel. *Id.* at 299. And so third, the court found that when the complaint and the class definition were read in

9

conjunction with AT&T's unchallenged affidavit, the case had enough in controversy to remain in federal court. In sum, the Fourth Circuit concluded that

> taking (1) the challenged practice as alleged in the complaint, (2) the definition of the class consisting of persons who were victims of the challenged practice, and (3) [the defendant's] data about the number of persons fitting that class, which were established by affidavit and remained unchallenged, [the defendant] demonstrated that the matter in controversy exceeds the sum or value of $5 million . . . .

*Id.*

Applying *Strawn* to the case at hand, CIOX has demonstrated that the amount in controversy exceeds $5 million. First, in the complaint the plaintiffs claim that it is unlawful for CIOX to charge these electronic records fees, not (just) to charge and collect them. *See* ECF 2, ¶¶ 3–5 (describing how Maryland law regulates what medical records providers may charge), 7–9 (explaining that the case "seeks only to challenge the 'Junk Fees' that are *charged* in relation to electronically delivered medical records" and "fees *charged* by CIOX when it is retrieving and preparing electronic medical records") (emphasis added); *id.* at 10 ("Maryland Law Expressly Limits the Fees that Can be Charged for Producing Medical Records"). To be sure, the plaintiffs also challenge the collection of the fees—CIOX's collection of the fees is the target of their MCDCA claim, for instance. *See id.* ¶¶ 105–17. And often, the plaintiffs circumscribe the amount they seek to recover to the amount CIOX "charged and collected." *See, e.g.*, *id.* ¶ 125. Nevertheless, even if the plaintiffs limited their desired recovery to the fees that were both charged and collected, the plaintiffs' claims put the mere charging of the fees "at issue." *See Scott*, 865 F.3d at 194. And what matters is the amount put at issue, not the amount the plaintiffs might recover. *See id.* Second, reinforcing that conclusion, the plaintiffs define the class as the people who "were *charged* a Junk Fee, or a fee in violation of the 75%-Rule or the $80-Rule, by CIOX." ECF 2, ¶ 83 (emphasis added). They do not define the class as the people from whom CIOX

collected these fees. And nowhere do the plaintiffs carve out of the class the people who were charged the fee but never paid it. Third, CIOX has established by affidavit the total amount of fees paid by the members of the putative class: $5,039,050.[1] So by the three criteria the Fourth Circuit employed in *Strawn*, CIOX has carried its burden and established that the amount in controversy is high enough for CAFA jurisdiction. *Cf. Schutte v. Ciox Health, LLC*, 574 F. Supp. 3d 618, 622 (E.D. Wis. 2021) (denying plaintiffs' motion to remand class action against CIOX because the class definition encompassed all people charged certain fees in violation of Wisconsin statute), *aff'd*, 28 F.4th 850 (7th Cir. 2022).

Without engaging with *Strawn* directly, the plaintiffs offer two counterarguments. Neither persuades. First, the plaintiffs argue that because the amount in controversy is fixed at the time of removal, the amount in controversy here includes only the amount CIOX collected by the time it removed the case to federal court. The plaintiffs' conclusion does not follow from their premise. Of course, the amount in controversy is the amount at issue when CIOX removed the case. *See Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008). But that proposition alone says nothing about whether the amount at issue is the amount collected by the date of removal or the amount charged by the date of removal. Either approach satisfies the rule that the amount in controversy is fixed by the date of removal.

Second, the plaintiffs argue that because the MCMRA, MCPA, and MCDCA permit them to recover only their actual damages, the amount in controversy is limited to the amounts they have

---

[1] In their motion to remand, the plaintiffs challenged CIOX's calculations, asserting that CIOX wrongfully counted fees charged through the end of 2023—10 days past the date of removal, December 21, 2023. ECF 17-1, at 20–21. The plaintiffs misread the affidavit CIOX submitted, which clearly and repeatedly states that CIOX considered the period up to December 1, 2023—that is, 20 days prior to removal. *See* ECF 1-1, ¶¶ 11–13. After CIOX pointed out the plaintiffs' mistake, ECF 22, at 18 n.5, the plaintiffs did not defend this argument, *see* ECF 23, at 1–6.

actually paid already. But the question is "not what the plaintiff will actually recover" but rather how much "will be put at issue in the course of the litigation." *Scott*, 865 F.3d at 196. And the plaintiffs are also seeking a declaration under the Maryland Declaratory Judgment Act "that CIOX's predatory conduct and unlawful billing and collections practices alleged herein" violate the MCMRA. Maryland courts have recognized that the MCMRA "limits the fees that healthcare providers may *charge* for the provision of medical records." *Silver*, 243 A.3d at 583 (emphasis added). As noted above, the plaintiffs acknowledge much the same in their complaint. *See* ECF 2, ¶¶ 3–5, 7–9; *id.* at 10. The plaintiffs have put the amount CIOX charged at issue, not just the amount CIOX collected.

CAFA confers original jurisdiction over this case because the amount in controversy includes the amount of challenge electronic records fees charged, not just the amount charged and collected. So the Court need not and does not decide the value of the declaratory judgment or the attorneys' fees, nor whether the Court would have diversity jurisdiction as well.

## IV.   Conclusion

For the reasons above, the plaintiffs' motion to remand, ECF 17, is denied. A separate order follows.

Date: May 29, 2024

Deborah L. Boardman
United States District Judge